IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RED ROSE TRANSIT AUTHORITY,** | : | **CIVIL ACTION** |
| Plaintiff | : | |
| | : | |
| vs. | : | NO. 11-1146 |
| | : | |
| **NORTH AMERICAN BUS** | : | |
| **INDUSTRIES,** | : | |
| Defendant | : | |

# M E M O R A N D U M

**STENGEL, J.**                                                                                          **January 16, 2013**

In this diversity action, Red Rose Transit Authority brings claims against North American Bus Industries for negligence, strict liability, and breach of warranty stemming from a fire which destroyed a bus, damaged other buses, and damaged the plaintiff's garage. The defendant's motion for partial summary judgment raises the economic loss doctrine as a defense. For the reasons that follow, I will grant the motion.

## I. BACKGROUND

Red Rose Transit Authority is a municipal transportation authority with its principal offices in Lancaster, Pennsylvania. North American Bus Industries is a bus manufacturer located in Alabama which purchased certain bus manufacturing assets and liabilities from several companies, including those of its former co-defendants.[1] The defendant is engaged in the business of designing, manufacturing, and selling mass transit buses, including the branded name of "Opus Coach."

---

[1] Red Rose Transit Authority and North American Bus Industries stipulated to the voluntary dismissal of these co-defendants. I approved that stipulation on May 7, 2012. See Doc. #30.

On July 11, 2002, the plaintiff accepted bids for the purchase of passenger buses as part of a multi-year vehicle purchase. About a week later, the bid for a 30/35 foot transit bus was awarded to Chance Coach, Inc., whose assets and liabilities were subsequently transferred to Defendant North American Bus Industries. A contract was entered into on October 2, 2002 between the plaintiff and Chance Coach. On May 5, 2003, the plaintiff received a shipment of vehicles pursuant to that contract, including the Opus Coach bus referred to here as "Bus #135.

On June 14, 2009, at one o'clock in the morning, a fire started on Bus #135 while it was parked for the night in the plaintiff's garage. Thirty-four other buses were parked there as well. Twenty minutes later, the Lancaster City Fire Department arrived and found Bus #135 on fire with soot and smoke covering the garage and all the other buses.

An investigation determined that the origin of the fire was within the battery compartment located beneath the driver's seat. Apparently, a twenty-four volt battery cable shorted to ground on a steel battery tray structural member and also to a battery clamp bolt. The electrical shorting resulted in sparking that then ignited other combustible materials housed within the battery compartment of the bus causing the fire. For our purposes here, the battery compartment and associated equipment were designed, manufactured, and assembled by the defendant. Red Rose seeks to recover damages on one count of negligence, one count of strict liability, and one count of breach of warranty.

## II. STANDARD OF REVIEW

A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law. FED.R.CIV.P. 56(a). A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers or other materials. FED.R.CIV.P. 56(c)(1)(A). That is, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. at 322. Under Rule 56, the court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson v. Liberty Lobby, Inc., 477 U.S. at 255. The court must decide not whether the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. Id. at

3

252. If the non-moving party has exceeded the mere scintilla of evidence threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### III. DISCUSSION

The plaintiff seeks to recover damages for the total destruction of Bus #135, for the repair of the other buses involved, and for the repair to the structure and contents of the garage where the buses were housed at the time of the fire. The defendant contends the economic loss doctrine limits the damages to contract remedies for damage to Bus #135. Further, the defendant raises the statute of limitations, and seeks to limit the plaintiff's claims to damage to property other than Bus #135.

### A. Economic Loss Doctrine

The economic loss doctrine prohibits plaintiffs from recovering in tort economic losses which flow from a breach of contract. Werwinski v. Ford Motor Co., 286 F.3d 661, 671 (3d Cir. 2002). The doctrine is typically invoked in cases involving a product failure resulting in no injuries, because:

> When a product injures only itself the reasons for imposing a tort duty are weak and those for leaving the party to its contractual remedies are strong. The tort concern with safety is reduced when an injury is only to the product itself. When a person is injured, the "cost of an injury and the loss of time or health may be an overwhelming misfortune," and one the person is not prepared to meet. In contrast, when a product injures itself, the commercial user stands to lose the value of the

4

> product, risks the displeasure of its customers who find that the product does not meet their needs, or, as in this case, experiences increased costs in performing a service. Losses like these can be insured.

East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 871 (1986)). The Superior Court of Pennsylvania adopted the economic loss doctrine. REM Coal Company, Inc. v. Clark Equipment Co., 563 A.2d 128, 134 (Pa. Super. 1989).

In Pennsylvania, negligence and strict liability theories do not apply in an action between commercial enterprises involving a product that malfunctions where the only resulting damage is to the product itself. REM, 563 A.2d at 134. In those situations, the proper method of recovery is a cause of action based upon a contract and/or breach of warranty theory pursuant to the terms of the purchase contract for the defective product. Id. "A manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself." East River, 476 U.S. at 871. The basis for this rule is that damage to a product itself is most naturally understood as a warranty claim. Id. at 872. In such a situation, express and implied warranties under contract law are best suited to compensate for a loss in product value. Werwinski, 286 F.3d at 671. The injury suffered is the essence of a warranty action, through which a contracting party can seek to recoup the benefit of its bargain. East River, 476 U.S. at 868. An essential aspect of the East River economic loss doctrine, and one that is quite relevant here, is that while tort recovery is barred for damage a product causes itself, such recovery is available for damage the failing product causes to other property. Id. at 867, 870.

5

Here, there was a contract for the purchase of Bus #135.  That contract contained a warranty running from the defendant to the plaintiff.  In addition, the plaintiff is free to assert implied warranties under Pennsylvania law.

I am not persuaded by the plaintiff's argument that the economic loss doctrine does not apply due to the bargaining position of the plaintiff, the ability to secure warranties for vehicles, and because of the very purpose for which the vehicle is put.  This argument is belied by the testimony of the plaintiff's own 30(b)(6) witness.  Mr. David Kilmer, the Executive Director of Red Rose Transit Authority, testified that the plaintiff had the ability and the power to require stronger, more protective warranties in its bid solicitation.  See Kilmer Dep. at 69-71.  He acknowledged that the plaintiff would have had to arrange for funding in the event an increased purchase price resulted from requiring a longer warranty period.  Id. at 68, 70-71.

Contract law, and the law of warranty in particular, is well-suited to commercial controversies such as the one involved here because the parties may set the terms of their own agreements.  East River, 476 U.S. at 872-873.  The manufacturer can restrict its liability, within limits, by disclaiming warranties or limiting remedies.  Id. (citing U.C.C. §§ 2-316, 2-719).  In exchange, the purchaser pays less for the product.  Id.

A warranty action also has a built-in limitation on liability, whereas a tort action could subject the manufacturer to damages of an indefinite amount.  The limitation in a contract action comes from the agreement of the parties and the requirement that consequential damages, such as lost profits, be a foreseeable result of the breach.  East River, 476 U.S. at 874.  "Permitting recovery for all foreseeable claims for purely

6

economic loss could make a manufacturer liable for vast sums. It would be difficult for a manufacturer to take into account the expectations of persons downstream who may encounter its product. . . 'The law does not spread its protection so far.'" East River, 476 U.S. at 874 (quoting Robins Dry Dock & Repair Co. v. Flint, 275 U.S. 303, 309 (1927)).

The plaintiff purchased Bus #135 following a formal solicitation-negotiation-bid process. It was free to negotiate any contractual protections it desired and did, in fact, negotiate various warranty terms. The plaintiff set the warranties in the initial solicitation to bidders. If it desired longer warranties as protection against the unknown, the plaintiff could have sought additional, longer warranties, and the cost of these warranties would have been included in the purchase price. Mr. Kilmer acknowledged that the only consideration associated with greater warranties is the increased cost. See Kilmer Dep. at 72-73; 70-71. Under these circumstances, there is no reason to intrude into the parties' allocation of the risk. See East River, 476 U.S. at 873.

The plaintiff's argument that the economic loss doctrine should give way to tort remedies based on the nature of the alleged contract violation is also meritless. Even when the harm to the product itself occurs through an abrupt, accident-like event, such as the fire on Bus #135, the resulting loss due to repair costs, decreased value, and lost profits is essentially the failure of the purchaser to receive the benefit of its bargain -- traditionally the core concern of contract law. East River, 476 U.S. at 870. The plaintiff insists that Bus #135's defect rendered it "dangerous not merely ineffective," and thus the bus should be considered property damage. Citing Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Company, 652 F.2d 1165 (3d Cir. 1981), the plaintiff argues that the

7

possibility of burn injuries turned Bus #135 into a dangerous commodity. In its decision, the Court of Appeals for the Third Circuit predicted that Pennsylvania's courts would rule that complaints of catastrophic loss caused by dangerous occurrences would be governed by tort law, because more than mere product failure is at issue. Thus, the economic loss doctrine was not applied, and the plaintiff was allowed to recover what it could in tort. Id. at 1166-1176. A few years later, the Supreme Court of the United States reviewed and expanded the economic loss doctrine in East River. In doing so, the Court cited various approaches in the nation dealing with claims of products injuring themselves. As an example of an inappropriate approach, the Court cited the Pennsylvania Glass Sand decision which permitted products-liability action under certain circumstances, requiring a court to consider the nature of the defect, the type of risk, and the manner in which the injury arose. East River 476 U.S. at 869-870. The Court rejected this approach finding it too indeterminate to enable manufacturers easily to structure their business behavior. Id. The Court held that the economic loss doctrine would apply to all types of claims for product failure, and that a manufacturer in a commercial relationship had no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself. Id. at 871.

Accordingly, because the economic loss doctrine applies to the plaintiff's claims seeking recovery for damage to Bus #135, the plaintiff is limited to contract remedies for that damage. Because the doctrine does not apply to the plaintiff's claims for damage to the other buses involved in the fire or to the garage where the buses were housed, those claims may continue.

8

**B. Breach of Warranty**

In Count Three, the plaintiff alleges that although the defendant expressly and/or implicitly warranted that Bus #135 and its components were of merchantable quality, fit for ordinary use, and fit for the particular use for which it was purchased, the defendant nonetheless breached those warranties. The defendant argues that because the fire occurred after even the longest non-load-bearing warranty expired, the plaintiff's contractual claims for damage to Bus #135 are time-barred.

The maintenance of product value and quality is precisely the purpose of express and implied warranties. East River, 476 U.S. at 872 (citing U.C.C. § 2-313 (express warranty), § 2-314 (implied warranty of merchantability), and § 2-315 (warranty of fitness for a particular purpose)). Therefore, a claim of a nonworking product can be brought as a breach-of-warranty action. Id.

Here, under the contract, the defendant "warrants and guarantees to the original Procuring Agency each complete bus, and specific subsystems and components." The warranty provisions negotiated by the parties were:

1. The Complete Bus to be free from defects for one year or 50,000 miles, whichever comes first.

2. The body, body structure, and structural elements of the suspension to be free from defects for three years or 150,000 miles, whichever comes first.

3. Primary load carrying members of the bus structure, including structural elements of the suspension, to be free from corrosion failure and/or fatigue for twelve years or 500,000 miles, whichever comes first.

9

> 4. The propulsion system components, specifically the engine, transmission and drive and non-drive axles are to be free from defects for five years or 300,000 miles, whichever comes first.
>
> 5. Major subsystems, including the brake system, destination signs, HVAC, door systems, air compressor and dryer, wheelchair lift and ramp system, starter, and alternator, to be free from defects for three years or 150,000 miles, whichever comes first.

Thus, applicable warranties are one, two, three, five, and twelve years. There was no warranty for any aspect of the bus for an indefinite period, and the electrical system was not warranted for a twelve-year period. The warranties were clearly written in the bid documentation. Bus #135 was finally accepted without condition by the plaintiff on May 5, 2003. The fire occurred in June 2009, more than six years later. Thus, the only warranty still in force at the time of the fire was the warranty as to corrosion failure and/or fatigue in the primary load carrying members of the bus structure, including the structural elements of the suspension. The fire that started in the battery compartment and battery tray was not covered by that twelve-year warranty. Therefore, no express warranty could have been breached by the fire.

The plaintiff characterizes the warranties on Bus #135 as unconscionable and valueless because the effect is that the defendant has zero responsibility for its vehicle.[2] It argues that the contract failed in its essential purpose. See Document #37. The

---

[2] I am also not persuaded by the plaintiff's argument that public policy would support the parties' contract being declared invalid. First, there is no evidence of usury, fraud, or the encouragement of reckless or criminal conduct. Second, the plaintiff drafted the contract and was free to negotiate any terms of that contract which involved the routine purchase of a manufactured product. Third, public policy would better be served by enforcing contracts according to their terms.

plaintiff further insists that buses designed for public transportation include provisions for a long useful life measured in both time and mileage increments. There is no violation of an "essential purpose" when the warranty period proves, in hindsight, too short to cover the contingency giving rise to the economic loss. The plaintiff has not cited and this court has not found any authority to support the proposition that a product failure after the warranty period retriggers that warranty period. According to Mr. Kilmer, the plaintiff was free to negotiate any contractual protections it desired including terms of a warranty.

Next, I note that the parties' solicitation and bid state that the express warranties do not displace statutory warranties. Statutory warranties of merchantability and fitness for a particular purpose may be implied in a given transaction by Sections 2-314 and 2-315 of the Uniform Commercial Code. See 13 Pa. Cons. Stat. §§ 2314 & 2315. Those warranties are breached, however, at the time of delivery, see 13 Pa. Cons. Stat. § 2725(b), and the aggrieved party would have four years from the time of delivery in which to bring a claim for breach of warranty, id. § 2725(a). Thus, this action would still be untimely under the four-year limitations period of the Uniform Commercial Code because it was filed on February 17, 2011, almost eight years from May 5, 2003, the date of delivery. Accordingly, whether the warranty terms of the contract are considered or the four-year limitations period of the Uniform Commercial Code, the plaintiff's claims for damage to Bus #135 are time-barred.

The defendant properly notes that if no statute of limitations were enforced, manufacturers would be turned into insurers of their products, which Pennsylvania has

11

steadfastly refused to do.  See Schmidt v. Boardman Co., 11 A.3d 924, 939 n.14 (Pa. 2011) (noting that the intent of the Second Restatement was not to render the manufacturer an insurer of his product, responsible for any and all harm caused from the use of its product, regardless of the product's utility and relative safety).  Allowing the plaintiff to prevail on this claim for damage to Bus #135 could subject manufacturers to warranty suits indefinitely.

The plaintiff argues, however, that, the defendant breached a warranty because it "agreed, in writing, that it would provide a transit coach that would operate for 12 years and/or 500,000 miles and agreed to on-going inspections of the vehicle."  It cites Nationwide Insurance Co. v. General Motors Corp., 625 A.2d 1172 (Pa. 1993), for the proposition that certain warranties that "extend to future performance" are breached, not at the time of delivery, but at the time of the accident giving rise to the claim.  Id. at 1178.  The facts in Nationwide, however, are distinguishable in at least one very relevant way.  The fire that destroyed the vehicle in that case occurred *within* the express warranty period, and the court was asked to determine the length of time the purchaser/warrantee would have to file a complaint.  Id. at 1173, 1147 n.4.  The Supreme Court of Pennsylvania held that express warranties of this type extend to future performance, so that a cause of action for breach accrues upon discovery of the breach during the warranty period, and not at the time of delivery.  Id. at 1178.  Here, even assuming that the contract contained an implied warranty of twelve years and/or 500,000 miles, the action is still untimely because implied warranties are breached at the time of delivery pursuant to the Uniform Commercial Code.  This action was not filed within four years of

its delivery to the plaintiff. Accordingly, I will enter judgment on behalf of the defendant in Count Three.

In conclusion, the plaintiff and the defendant are sophisticated entities for whom the negotiation of the purchase and sale of a bus is of the most routine nature. The plaintiff may not recover in tort economic losses to which its entitlement flows only from its contract with the defendant. Instead, the plaintiff is limited to contractual remedies for any damage to Bus #135. Unfortunately for the plaintiff, however, no written warranty was breached before its expiration, and any cause of action for all implied warranties is time-barred under the Uniform Commercial Code. Accordingly, I will grant partial summary judgment to the defendant on that portion of the plaintiff's claims seeking the recovery of damages to Bus #135.

An appropriate Order follows.